IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY LEE WATKINS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-0745-D |
| | § | |
| OFFICER RODRIGUEZ | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Abel Rodriguez, a Ferris police officer, has filed a motion for summary judgment in this *pro se* prisoner civil rights action brought under 42 U.S.C. § 1983. In his complaint and interrogatory answers, plaintiff alleges that defendant arrested him for the misdemeanor offense of criminal mischief without a warrant or probable cause -- a charge that was dismissed after plaintiff spent 30 days in jail.[1] Defendant counters that he is entitled to qualified immunity because his conduct was objectively reasonable under the totality of the facts and circumstances that existed at the time of the arrest. Plaintiff was ordered to file a response to the motion by November 22, 2011, but failed to do so. The court therefore decides the motion without a response.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

---

[1] Plaintiff also accuses defendant of failing to advise him of his *Miranda* rights. That claim was summarily dismissed on initial screening. *See Watkins v. Rodriguez*, No. 3-11-CV-0745-D, 2011 WL 2559563 at *2 (N.D. Tex. May 10, 2011), *rec. adopted*, 2011 WL 2559549 (N.D. Tex. Jun. 28, 2011), citing *United States v. Patane*, 542 U.S. 630, 641-42, 124 S.Ct. 2620, 2629, 159 L.Ed.2d 667 (2004) (failure to give *Miranda* warnings, by itself, does not give rise to a constitutional violation).

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). Where, as in this case, the nonmovant has not filed a summary judgment response or submitted any controverting evidence, the court may accept as true the undisputed facts adduced by the movant. *See Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996).[2] All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Here, defendant moves for summary judgment on his qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 Fed. Appx. 379, 383, 2010 WL 3190709 at *3 (5th Cir. Aug. 12, 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-step analysis to determine whether a police officer is entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct.

---

[2] Although the verified pleadings of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Fed. R. Civ. P. 56(c)(4), *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), the only sworn pleadings submitted by plaintiff are his interrogatory answers filed on May 9, 2011. Nothing in those interrogatory answers controverts the summary judgment evidence relied on by defendant.

2508, 2513, 153 L.Ed.2d 666 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.), *cert. denied*, 125 S.Ct. 102 (2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S.Ct. at 816, *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* at 818.

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1355 (2003). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

Judged against these standards, the court determines that plaintiff cannot overcome the affirmative defense of qualified immunity. To prevail on his false arrest claim under 42 U.S.C. § 1983, plaintiff must prove that defendant lacked probable cause to arrest him. *See Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Probable cause exists for a warrantless arrest "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 2343 (2010), *citing Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). The uncontroverted evidence

shows that defendant was on duty as a police officer for the City of Ferris on October 25, 2010, when he was dispatched to property owned by Lonnie Magness. (*See* Def. MSJ App. at 5, ¶ 3). Upon arrival, Magness told defendant that he encountered an African-American male wearing a gold necklace tampering with the air conditioning unit of his building. (*Id.* at 1, ¶ 3 & 5, ¶ 3). When Magness shouted at the suspect, the man fled on foot, leaving behind a green bicycle. (*Id.* at 1-2, ¶¶ 3-4 & 5-6, ¶¶ 3, 5). Defendant observed wires and copper pipe cut from the air conditioning unit. (*Id.* at 2, ¶ 4 & 6, ¶ 4). He also inspected the bicycle, which had a pink seat. (*Id.* at 6, ¶ 5). Tied to the bicycle were bags containing scrap metal parts. (*Id.* at 2, ¶ 4 & 6, ¶ 5). Because Ferris is a small community, defendant is familiar with many of its residents, including plaintiff. (*Id.* at 6, ¶ 6). On several occasions, defendant observed plaintiff riding a green bicycle with a pink seat while hauling scrap metal to a local dealer. (*Id.*). Defendant and other Ferris police officers knew that plaintiff had been involved in stealing or attempting to steal metal parts, including copper from air conditioning units. (*Id.*). After meeting with Magness, defendant loaded the green bicycle into the trunk of his squad car and drove about half a mile to plaintiff's residence. (*Id.* at 6, ¶ 7). As he approached the residence, defendant observed plaintiff in the front yard. (*Id.* at 7, ¶ 8). Plaintiff quickly retreated inside the house when he saw the police car, which defendant viewed as suspicious behavior. (*Id.* at 7, ¶ 9). When defendant knocked on the front door, plaintiff opened the door and came outside. (*Id.*). Defendant asked plaintiff if he had misplaced his bicycle. (*Id.*). Plaintiff said that his cousin had taken the bike earlier in the day and he had not seen it. (*Id.*). Although defendant believed that the totality of the circumstances established probable cause for an arrest even before plaintiff retreated inside his residence, (*see id.* at 7, ¶ 8), defendant merely detained plaintiff until Magness arrived on the scene to identify him. (*Id.* at 7, ¶ 10). Magness expressed some initial uncertainty as to whether plaintiff was the person he saw tampering with his air conditioning unit, primarily

because the suspect wore a different color shirt with red lettering. (*Id.* at 2-3, ¶ 8 & 7, ¶ 11). However, after observing plaintiff and noticing his gold necklace, Magness positively identified plaintiff as the suspect. (*Id.* at 3, ¶ 8 & 8, ¶ 11). Magness states that he was not pressured, encouraged, or otherwise influenced in any way to identify plaintiff. (*Id.* at 3, ¶ 9). Rather, Magness believed that plaintiff was the person he saw earlier in the day at his building after noticing the gold necklace a second time. (*Id.* at 3, ¶ 10). Defendant also denies coercing Magness. (*Id.* at 7-8, ¶¶ 11-12). Even without this identification, defendant believed he had probable cause to arrest plaintiff for criminal mischief. (*Id.* at 8-9, ¶¶ 12, 14).

Under Texas law, a person commits the misdemeanor offense of criminal mischief if he "intentionally or knowingly damages or destroys the tangible property of the owner[,]" or "intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person[.]" *See* TEX. PENAL CODE ANN. § 28.03(a)(1) & (2) (Vernon 2009). It is clear from the totality of the facts and circumstances that a reasonable police officer had probable cause to believe that plaintiff committed this offense. Not only did Magness identify plaintiff as the person he saw tampering with his air conditioning unit, but plaintiff was known to have been involved in stealing or attempting to steal metal parts, including copper from air conditioning units. An investigation of the crime scene by defendant revealed that wires and copper pipe had been cut from the air conditioning unit. Plaintiff's bicycle was found at the scene. Tied to the bicycle were bags containing scrap metal parts. None of these facts are disputed by plaintiff. Without any controverting evidence, plaintiff cannot create a genuine issue of material fact for trial.

## **RECOMMENDATION**

Defendant's motion for summary judgment [Doc. #35] should be granted. This case should be dismissed with prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 6, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE